The Honorable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to Good morning, Mr. McDaniel. Good morning, Mr. Sheffield. And good morning, all. Mr. McDaniel, will you be reserving any of your time for rebuttal? If it pleases the Court, I would like to reserve three minutes. All right, that's fine. And you may proceed with your argument when you are ready. Thank you, Your Honor. Good morning. I'm Robert E. McDaniel. I appear this morning on May it please the Court. Since the inception of this case, the government has advanced the proposition. In fact, the defendants have advanced the proposition that this case is about immigration jurisdiction and deportation. And in fact, for a period, it was. However, not today. Today, this is a case about a contract dispute, pure and simple. It is about whether or not Renato Filippi is entitled to an opportunity to prove that he has a valid agreement enforceable law, which exists between him and the United States government. From the time he entered the United States at the Texas border in 2002, he had only a few minutes before he was apprehended and a few more minutes before he was solicited, recruited, and enlisted as a confidential informant for federal law enforcement authorities. It was promised if he performed this work, which carries no small risk, he would be allowed to stay in the United States. He would be given a work authorization, a driver's license, a social security number, and the ability to build a future. He accepted the government's offer and he performed with distinction for nine years, providing information and intelligence on criminal activity for the Drug Enforcement Administration, for ICE, for Customs and Border Patrol, the Defense Intelligence Agency, and the at this sort of work. He was able to gain the trust of criminal elements and eventually the subjects that his confidential informant activities covered ranged from bogus marriages and phony documents to narco-trafficking and even threats against the United States in the form of terrorism. Mr. Filippi kept his promise and he acted and conducted himself with distinction. It's interesting to me that all he's before the court today for is to ask this court for an opportunity to go in and litigate this contract dispute. We're not here to argue about Section 1252 or the Real ID Act. He had an agreement. He kept his side of the promise and the government did not. And the reason why the government did not was that on January 25, 2017, Executive Order 13768 was signed. It had the curious title of enhancing public safety in the interior of the United States, but what it actually did was it upended immigration enforcement policy under which Renato Filippi had lived for 15 years, had built his life on, and had relied upon with the consent and the assent of the United States government. Then suddenly he was ordered out of the country at age 61. In the meantime, he had relied on the government's conduct. His wife and daughter were allowed to enter the country. He worked and helped build a business. His contributions to the business actually created jobs for Americans. He prospered. He educated his daughter who is now a U.S. citizen and is employed as an evidence analyst for the United States Secret Service, part of DHS, the very department now trying to deport her dad. He even bought a home and he lived as he dreamed he could live as an American citizen. Suddenly, he was ordered to leave and the promises that were made to him were absolutely gone. The case hinges on two words, really, arising from, because the district court, when the original complaint was filed, it contained five accounts, four of which related to immigration matters, one of which is this dismissed all five counts on the basis that they were barred by the Real ID Act and the provisions that strip jurisdiction, which are contained in section 1252. The entire suit turned on the phrase arising from, because 1252G says the court has no jurisdiction to hear any cause or claim arising from a decision by the Attorney General to execute a removal order. But this court has constrained that. The Aguilar decision that was rendered by this court in 2007 had cut back on the breadth. In fact, the court went so far as to say it was not going to endorse a sprawling construction of section 1252 and the court said that for good reason. It said that the arising from criteria cannot be read to swallow all claims that might touch upon or be traced to government efforts to remove an alien. This court also excludes from the arising from criteria, quote, claims that are independent of or wholly collateral to the removal process. But counsel, in this case, isn't the claimed breach precisely that, that the government wanted to remove him and attempted to do so? Your Honor, that is exactly a bullseye point. When the government of the United States made the deal with Renato Filippi and said, if you do these things for us, which are dangerous and which we want, then you can stay. At that point, the government's ability to proceed with the removal order evaporated. They abandoned it. They traded the removal of this immigrant for his services. And then suddenly, when EO 13768 came out, it said that anybody who had an outstanding removal order would be removed immediately and that's why Renato got the word, buy a ticket and get out within the next 30 days. However, the government did not have the authority or the right to assert the removal order because it gave up the removal order in 2002 when Renato crossed the river and entered the United States. And that is precisely our point. The fact of the removal order is the breach of contract. The breach of contract is actionable. And like any person... How does that help you under 1252? Pardon me? How does that help you under 1252? I'm not understanding why what you just gave as your answer isn't a problem rather than a solution to the question that was asked. Because what you're saying is that the only way in which the claim has any meaning is as a prohibition against the execution of the removal order. So doesn't that make 1252 a problem for you? No, sir, I don't think it does. And the reason is that the 1252 restriction on jurisdiction says that people who are challenging a removal order cannot go into court and do it on a direct assault. That's not what we're saying. We're saying, fine, this court did uphold the dismissal of counts one through four. But count five is a contract claim which is independent of any removal order. Imagine if Mr. Filippi, instead of bringing counts based on immigration law, had brought one single count and one alone, that the government made a deal and then they breached the deal. The government could then not come in and assert 1252 jurisdictional bars in a contract case out of whole cloth. So the fact that this is an independent cause of action unrelated to immigration, the same as any citizen who makes a deal with the government and the government breaches it, the immigration laws of the United States don't come into force in effect. And further, the government's position that Mr. Filippi could have raised this during the administrative process in the immigration system just does not stand up because the immigration courts do not have the authority to regulate or determine the results of suits based upon a contract. It's the government's position, in my view. Can I turn you to a different issue, 1252, for a second, which is you made a reference to the cause of action. How do you address, assuming that there's no 1252 bar, you still have to have a cause of action and there still has to be a waiver of sovereign immunity? Your Honor is absolutely correct about that. Okay, so what is the cause of action? Is it the APA that you're suing under? No, it would be. If it's not, where is the waiver of sovereign immunity? Well, the waiver of sovereign immunity appears in several places. I believe there's a partial waiver in the Declaratory Judgment Act. There's the Little Tucker Act and the Tucker Act as well. A citizen who engages in contractual arrangements with the government has a right to seek enforcement of those claims. And so it's a plain and simple contract claim. I think it could be alleged as bad faith action on the part of the government. It could be brought perhaps under the Federal Tort Claims Act, but that is Mr. Filippi's responsibility if the court grants us the relief we're seeking, which is a remand to the district court so that the contract claim can be properly litigated. He's going to have to overcome the 12b motions. He's going to have to establish things and that's his burden. But he does have the right to go in and do it. And that goes a long way back in our jurisprudence. It goes all the way back to Marbury v. Madison, which says every right when withheld must have a remedy and every injury its proper redress. Do you believe that this court has any remaining equitable powers in this area of the law? That this court, the First Circuit, has equitable powers? Remaining? I do, but we're not here today to ask for equitable relief. I think the court could very easily instruct the government to grant parole to this particular person, which means allow them to remain in the United States. They could recommend an S visa, a 601A waiver, asylum. All of those things are on the table and the district court does have the right to fashion equitable relief in a situation such as this. Is there an alternative method of seeking relief in this case that will allow your remain in the United States? Yes, sir, there is. In fact, there's an underused tool. There's something called an S visa, which is curiously, your honor, it's sometimes referred to as the snitch visa. And there's a limited number of them every year that can be awarded to people who serve as confidential informants for the government. It only requires a United Mr. Filippi remains here with his grandchild and his family. Have you requested that type of relief? Yes, sir, we have repeatedly. Only a small number are granted. They're not popular in the law enforcement community, but that is the easy solution to this problem. I note that Mr. Filippi... You say you have asked for it? Yes, sir. And what has been the response of the government? The response has generally been inaction. They're not interested. Nobody is willing to step forward and be the person who signs the document. It's not a complicated process. We do have on our litigation team, immigration lawyers familiar with it who have pressed this request forward to the government, but not with any success. Now, does this court have the power to order such a thing? I believe so, your honor, but I don't want to stick my neck that far out onto the chopping block without having researched it with precision, but I believe this court could say that that was at least an appropriate solution. Language such as that in a decision from this court or a judgment, I think would be compelling to the defendants in the case. And with that, your honor, I thank the court very much for the opportunity to stand before this court. I actually have a matter of such importance and magnitude. I have one further question for you. You mentioned that the claim that you're bringing now is a contract claim and could not have been brought in the ordinary removal proceedings, in your view? That's correct. Yeah. So that means you're not also bringing a claim of due process violation based on the contractual promise. Is that right? I believe that our due process claims have been dismissed by this court, and we have not sought review of that. But you're not contending that there was a due process violation in consequence of the violation of the contract? No, sir. We have not made that allegation in this particular petition for re-hearing. But one thing I don't understand is, since due process violations are a standard defense to removal in removal proceedings, I don't understand why that argument was not made below, because that could have been made in the removal proceeding, and I don't understand why counsel did not make it in all of the proceedings in which the removal was challenged. If there really was a breach of a contract promise to stay, why wouldn't that have given rise to a due process defense? I believe that my predecessors in this matter who handled the immigration proceedings concentrated on immigration law, and I'm not sure that anyone identified the judge. The immigration judge simply noted that Mr. Filippi alleged he had a contractual arrangement, but he took no action on it. So this is the first time, the first place that the government's breach of its agreement with Mr. Filippi has seen the light of day and has been heard. Good morning, your honors. Thank you very much. Thank you, Mr. McDaniel. If you would now mute your audio and video, we will hear from Attorney Sheffield. You need to unmute both your audio. I guess your video is unmuted, so unmute your audio and you're good to go. Good morning, your honors. Can you hear me now? I believe I have been unmuted. Yes. Okay. Good morning, your honors, and may it please the court, Fred Sheffield. Can you speak a little louder, please? Sure. Good morning, your honors, and may it please the court, Fred Sheffield, on behalf of the government. Can you hear me any better? Not much. Let me just try to bring the screen closer. That's better. Better? Okay. I might be a little too close for comfort now, but we'll have to live with that. May it please the court, Fred Sheffield, on behalf of the government. Your honors, the court was right to rule in favor of the defendants the first time around, just as it did initially, and the district court was right to dismiss this complaint. I think what we're hearing a lot from plaintiff's counsel during argument is a lot of things that did not appear in the complaint. We're hearing about the Tucker Act. We're hearing about S visas. Again, this is a point we made in our briefing. None of these provisions appear in the complaint as a basis for jurisdiction, and this is notwithstanding the fact that plaintiff was actually offered numerous times to spell out the jurisdictional basis for his case. The district court asked for a memo specifically on the subject of jurisdiction before it dismissed the case. None of these provisions came up, whether it was the Tucker Act, whether it was APA, or anything else. In fact, I think if you look at that brief that was submitted to the district court, it's on just the last page that plaintiff submitted basically a single sentence saying, of course, the district court would have jurisdiction. So the court, I think, has properly identified there are really two problems here. One is the jurisdictional bars presented by section 1252, and second, even if those 1252 bars don't apply, I think we're all left wondering what actually is the jurisdictional basis for a contract claim. Plaintiff has, of course, the burden to show that the district court has subject matter jurisdiction, and what I guess I'm hearing from him now is that, well, let's just deal with the 1252 problem, and if I'm given the opportunity, I'll come up with something when I get back to the district court. But, of course, that's not how it works. He has the obligation to identify a basis for subject matter jurisdiction throughout the whole case. Counsel, can I just ask one question? Because it might help you frame how you describe what happened and what you would like to see happen in the future. I want to tell you what my problem with the case is. My problem with the case is that there's been an ongoing allegation that the government did not cut square corners, and I've yet to see the government deny that allegation, and so I don't know what the government's view of that is, whether it feels it is obligated to live up to its promises, whether it thinks the promises were never made, whether it's just trying to avoid litigating that. I just want to tell you what's bothering me about the case. Sure. I mean, that's obviously something that you would get into if there weren't jurisdictional issues, so it's not something that we've delved into, and I would also say that that's something that, even if it couldn't have been raised before an immigration judge, it certainly could have been raised at the PFR level. My understanding, just to answer your question, your honor, my understanding is what likely happened. I haven't spoken to anyone who knows anything about what Plaintiff is alleging regarding some sort of contractual obligation. I've not seen anything about an S visa request, I have to tell you. Excuse me, but isn't the record clear as to what this gentleman did for the government? Does the government deny that he was a confidential informant for nine years at the risk of his life and his family's life, and that he produced information that was extremely useful for the government in various areas of law enforcement? Is that in doubt? Well, I don't know that we have any... You mean that's not in the record? What's in the record is Plaintiff quotes from an immigration judge decision, and that's all I see in terms of establishing that the facts that he alleged are true. He quotes from an immigration judge decision because he raised these same claims before the immigration court, and the immigration court found that they were not sufficient to merit persecution. So the immigration judge credited his allegations before the immigration court and said, even if all of these things are true, he still doesn't qualify for withholding. As I understand your answer to Judge Howard is that you either don't believe this or haven't seen these facts before, or heard these facts before, I should say. Correct. I have not seen anything about an S visa. All I've seen is the allegations and the complaint, Your Honor. And of course, when we have a jurisdictional matter, a question about subject matter jurisdiction, that's what comes first. I mean, I would also just note that the district court denied this action before we even filed a response at the district court level, right? So the government never had an opportunity to actually file a pleading. A complaint was filed, a TRO was filed, the district court requested a briefing on subject matter jurisdiction, which we think he did appropriately, and the case was dismissed. I'm sorry, did I interrupt you, Judge Howard? No, actually, you asked follow up questions that I should have asked. When you say the district court dismissed the case before you really had a chance to get into any of it, but that doesn't prevent the government when it has information that might suggest that there's an injustice here, that it hasn't cut square corners in the past, and I'm not making the accusation. I certainly don't know what the facts are. Is there no obligation to look into that? Your Honor, from what I did look into it, and from what I was told, is that what this likely was, was an officer. I mean, I didn't find anything to really confirm or deny the numerous allegations he makes about working for the government for nine years. What I was told, Your Honor, was that what he was likely told by officers in 2002, is that he would be permitted to have work authorization, and he would be permitted to be free from custody during the pendency of his withholding only application. So, recall that plaintiff came in, and it was subject to a reinstated order of removal. And so, for nine years, basically, he was waiting for his case to go before the immigration court on a withholding only case. And so, from the best of what I've been able to determine, is that what he was likely told is, look, while your case is pending before an immigration judge, you can be free from custody, and you can have employment authorization. Was he an informant or not? Again, Your Honor, that much I don't know. We don't have any evidence. I haven't seen anything of an S visa request. When you say you don't know, is that because you've looked, and you found out you can't tell, or because you haven't looked? I've asked, and I've been told that, again, what I just said, that as much as... Did you ask whether he was an informant? Sorry? Did you ask whether he was an informant? I asked about the... I mean, it's been a while since this was 2017. Well, it's a simple question. It's fine if you don't know. We would like... Does anybody in the government of the United States know whether he was an informant? I can't recall whether I specifically asked back in 2017 whether he was an informant. I think probably I ran the allegations in the complaint by the folks at DHS and said, effectively, what do we make of this? And what I recall being told was that this is probably a situation where he was told he could be released on work authorization. So I don't know. Would it make a difference to the government of the United States if he were an informant for all of that time? In other words, if the immigration judge's account of what happened was true, do you have any representation to us about whether there would be any effort by the United States to then honor that agreement? Or is the position of the United States that you don't have to have a view on that because there's no jurisdiction? For purposes of this action, what I think the issue before the court is whether he went about this the right way. It may well be that he's eligible for an S visa or U visa. There are, in fact, mechanisms that one can go through to raise this claim. He could have, again, raised this claim before an immigration judge. And even if the immigration judge couldn't have ruled on it, he could have then brought it before this court as part of a petition for review. So we're not really taking a- Has an S visa been denied? I have no idea, your honor. Today is the first I've ever heard of an S visa. There's no allegations of an S visa in the complaint. From our perspective, your honor, if the complaint had raised some of these issues, then I think I would be in a better position to speak to them. Can he still be granted an S visa? Your honor, I would have to look into that. I haven't done the research on what the requirements of an S visa are. Do we have any authority to order it? Not in this case, your honor. Certainly not. Pardon me? Not in this case, your honor. Why not? This is a case in which it applies to. The issue is whether plaintiff can raise these claims as part of an action in district court. Notwithstanding the fact that he's been through removal proceedings, had an opportunity to petition for review of that question, notwithstanding that he's had opportunities to raise this issue in motions to reopen. If there was an ineffective assistance of counsel question, he could have raised that in a motion to reopen. If the S visa were granted, would that move this case? Your honor, I really can't. I don't want to speak to. Well, if the S visa were granted, would it move the case? Your honor, I suppose if he had a valid visa, and then there wouldn't be an issue about removing him. So I suppose, yes. So in some sense, since let's say we thought the 1252 issue was difficult, and that it would have a lot of consequences for a whole lot of cases, would there be any objection of the United States of you telling us whether or not in fact there is an S visa pending and what action the government's going to take on it before we go and decide the difficult jurisdictional question? Your honor, I think our position here is that this is a very straightforward case, and the issue is whether. If we were to disagree with that, why wouldn't it make sense for, since we now have heard that there's an S visa pending, which if granted would moot the appeal. I hear from the government as to whether there is such an S visa pending and what it plans to do on it before we rule on the appeal. Just to be clear, your honor, I understood you to be asking if the S visa was granted, would it moot the appeal? There's two different questions, whether a pending S visa would moot the appeal. No, it wouldn't. But since an S visa granted, you said you don't even know if one's pending. Correct. It turned out one were pending and that it was quite likely to be granted. There would be no need for us to decide the jurisdictional question if that would take care of the case. So why wouldn't we just wait and get an answer from the government on the status of this allegedly pending S visa before we rule? If that's what the court orders, obviously, we'll do that, your honor. We'll comply with anything. And I would add one slight thing to that is I would have you inquire whether he was in fact an informant. If he wasn't an informant, that takes the S visa out of the way. But if he wasn't an informant, then the second question proceeds in my view. Your honor, again, even if he was an informant, the question before this court is whether he went about proceeding with these claims in the correct way. And I don't think there's any question that he did not. I mean, I understand it's a sympathetic situation. At least the allegations are sympathetic. But no, no, are you saying he never raised the issue of informant any time in this proceedings? No, of course, the complaint makes those allegations. But what the issue is, where is the right place? Where's the right court? Where's the right time and place to bring those allegations? But on that question, where is it? Where in your view, where is the right court? I think he could have raised it to an immigration judge and through the board. And fine, if the immigration judge and the board don't say that they don't have jurisdiction, then absolutely, by the PFR. And if he had on that score, I suppose he could have raised it, at least as a due process defense to the removal proceeding. Since that wasn't done, if that gave rise to an ineffective assistance of counsel claim, what would be the consequence of that? Could he then move to reopen based on ineffective assistance of counsel in the removal proceeding? Right, I mean, potentially he could have raised it in the first instance, right? Could he now have recourse to bring in ineffective assistance of counsel claim for a motion to reopen? Or what recourse does he have now that that was not done? I'd have to, it's been a while since I've looked at, I know he's filed several motions to reopen before. So there could be, I don't know the issues with respect to ineffective assistance of counsel. Counsel, I would like to make a suggestion. And I don't want you to feel that you're under any sort of pressure to go along with the suggestion. I would just like to know your view. Given that the concerns that have been raised here, and the possibility that an S visa might be available, the possibility that there might be a sua sponte reopening option available, or something like that. Would you like us to hold this appeal in abeyance for a period of time to give you a chance to explore that and perhaps explore it with counsel on the other side? It's entirely up to you. We can come out with our decision in the regular course. But I think based on the questions that have been asked, we'd certainly be willing to hold the case in abeyance to give you a chance to talk with counsel and explore some of these matters. My thought is that I'd be happy to look into whether to do that. If in fact an S visa has been filed, I'd be happy to hold the case in advance so that we can see what the status is of the S visa, and maybe update our briefs just to know how that may change the case or change the position of the government. I'll take plaintiff's counsel at his word, but if it turns out he's mistaken in some sense, and an S visa has not been filed, then I don't know that it makes sense to drag this out any further. He's obviously free to file an S visa going forward and then file future actions. But for purposes of this case, we're talking about whether the district court properly acted when it dismissed for lack of subject matter jurisdiction. So I mean, yes, Your Honor, I'd be happy to explore whether there are pending S visas and what's going on with that. And then if Your Honors would like, we can file updated pleadings on that. Well, I'll take that as we'll hold on to the case for a period of time. You tell me how much time you would like. And also, again, I am not pressing you. There may be other opportunities to make sure that the government has cut square corners here, or if it hasn't, that it is willing to rest on the facts not coming to light. We don't need to know the details. I just need to know how much time you would like. I suspect 60 days would work. All right. I will check with the other side when he comes back for rebuttal. Are there additional questions from the court? I think the process now is that you would, Mr. Sheffield, thank you for your argument that you would mute and that Mr. McDaniel would unmute both his video and his audio for three minutes of rebuttal. Whenever you're ready, counsel. Thank you, Your Honor. Let me be clear. There is no pending S visa application. The S visa has been requested on several occasions and has simply gone without any action by the defendants. Point number two, Fernando Filipe was... On point number one, I guess I don't understand that. If there was a S visa application submitted and no action was taken on it, in what sense is it not pending? Was it rejected? I suppose Your Honor is correct that we can certainly breathe new life into it and we certainly will beginning this afternoon. But I would like to add that Your Honor was correct. If an S visa is granted to Mr. Filipe, this case is moot. I will also suggest in response to Chief Judge Howard's suggestion that Renato Filipe was indeed an informant. He kept very detailed records and a notebook. He has identified for me the names of the federal agents who were involved in his recruitment and solicitation, who managed him in various areas of law enforcement. And I will be perfectly delighted with some kind of a protective order to protect Mr. Filipe's safety, to share these with counsel for the government in their entirety. The granting of the S visa would not only moot the case, it will restore this man to his family and to his well-deserved and well-earned place as a productive member of our society. I thank the court very much for its time this morning. Questions from the judges. Thank you. Thank you, counsel. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may now disconnect from the meeting.